IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DANIEL MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:10-CV-0102 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE AND REMAND THE DECISION OF THE COMMISSIONER**

Plaintiff DANIEL MARTINEZ brings this cause of action pursuant to 42 U.S.C. § 405(g),

seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social

Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and

supplemental security benefits (SSI).  Both parties have filed briefs in this cause.  For the reasons

hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED,

and the case remanded for additional administrative action.

I.
STATEMENT OF THE CASE

In 1993, plaintiff was injured in a work-related accident during which the fingers on his

right hand were severed.  Plaintiff underwent re-attachment surgery and recovered to the extent

that, from 1994 through August 2007 maintained gainful employment.[1]  (Tr. 131-32; 147).

Plaintiff was involved in a work-related accident on August 23, 2007.  (Tr. 126-30, 146, 207).  Plaintiff received temporary workers' compensation benefits beginning September 25, 2007. (Tr. 128-30).  On November 26, 2007, worker's compensation/public disability period benefits were suspended because plaintiff was offered light duty employment.  (Tr. 126).  On February 1, 2008, a doctor evaluated plaintiff for the Texas Department of Insurance.  The doctor opined plaintiff had reached Maximum Medical Improvement as of February 1, 2008, and assigned plaintiff a 0% whole person impairment rating.  (Tr. 203-14).

On March 24, 2008, plaintiff filed applications for DIB and SSI benefits alleging he became disabled on August 23, 2007 and unable to work due to back and neck pain due to an injury, bulging discs, and Schmorl's nodes;[2] knee pain; an inability to fully extend his right fingers after a re-attachment surgery in 1993; psoriasis on his hands, feet and waist; and depression and stress due to his back pain.  (Tr. 113-117, 118-124, 141, 146, 173).  Plaintiff averred his conditions limit his ability to work because he is unable to stand or walk for long periods due to back and knee pain, cannot bend over or twist, cannot use a hammer, drops things because of his hand injury, and cannot sit for long periods without standing.  (Tr. 146).  Plaintiff indicated back, neck, left shoulder and knee pain as the primary areas of his pain.  (Tr. 155- 60).  Plaintiff also indicated he has pain in his right hand after the re-attachment surgery in 1993.  (Tr. 161).  Plaintiff averred he cannot fully extend his fingers or grasp objects well, and has lost 75% of the use of his right hand.  Plaintiff

---

[1]Plaintiff's earnings were substantially decreased in 1997 and 2000.

[2]An upward and downward protrusion of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae, detectable with an x-ray test as a spine abnormality; common in the middle and lower spine and usually cause no symptoms but is an indication of degenerative process.  *www.MedicineNet.com*

advised he experiences pain in his hand when he tries to grasp something, and on cold days.

Plaintiff advised he stopped working because his back was injured. (Tr. 146). In his questionnaire concerning daily activities, plaintiff indicated limitations due almost exclusively to his back pain and related symptoms.[3] (Tr. 170-72). Plaintiff indicated he received workers' compensation temporary income benefits until November 26, 2007 when he was offered light duty employment, but that the decision to suspend payments was on appeal as of May 9, 2008. (Tr. 118, 125-27). Plaintiff identified past relevant work as a road laborer, farm machine operator, roofer helper, and meat cutter. (Tr. 36-37, 54-55, 162-69). At the time he filed his applications, plaintiff was 40-years-old.[4]

In 2008, the Social Security Administration denied benefits initially[5] and upon reconsideration.[6] (Tr. 60-70, 74-78). In a July 2008 follow-up Disability Report, plaintiff indicated his back, neck and shoulder pain, as well as his depression, had changed for the worse in

---

[3]Plaintiff indicated he is limited in the use of his hands, explaining "[r]ight hand had surgery in past, due to back causes numbness in hand." (Tr. 171).

[4]During an interview conducted April 8, 2008, plaintiff indicated difficulty sitting, having to "get out of his chair several times to stand" and complaining of back pain. (Tr. 143).

[5]A state agency identified plaintiff's primary diagnosis as chronic severe back and neck pain, and found the medical evidence was insufficient to establish a second diagnosis. (Tr. 60-61). The agency determined plaintiff's condition was not expected to remain severe enough for 12 months in a row to keep him from working. The agency noted plaintiff claimed he is disabled because of "back and neck injury; knee hurt; unable to fully extend fingers; cirriosis [sic] on hands; feet and waist." The agency determined medical information showed plaintiff's doctor had prescribed treatment for his conditions and by following orders, further improvement could be expected. The agency found that although plaintiff said he has various limitations caused by his symptoms, the evidence did not show his ability to perform basic work activities was as limited as he indicated and concluded there should be no major limitations placed on his ability to work. (Tr. 64-70).

[6]Upon reconsideration, a state agency identified plaintiff's primary diagnosis as back pain, and found the medical evidence was insufficient to establish a second diagnosis. (Tr. 62-63). The agency determined plaintiff's condition was not severe enough to be considered disabling. The agency noted plaintiff claimed he is disabled because of a back and neck injury and multiple joint pains, but found his current symptoms were not severe enough to be considered disabling. The agency noted medical information showed his condition was being treated and that as long as plaintiff followed his doctor's orders, his condition should remain under control. The agency determined that although plaintiff claimed various limitations caused by his symptoms, the evidence did not show his ability to perform basic work activities was as limited as he indicated and concluded there are no major limitations placed on his ability to work. (Tr. 74-78).

that plaintiff's pain sometimes prevents him from getting out of bed, bending over, or sitting or walking for a long period of time.  (Tr. 183, 186).  In an August 2008 follow-up Disability Report, plaintiff indicated his shoulder and back pain had gotten worse, that he could not stand for any length of time and that he was always depressed.  (Tr. 193).  Plaintiff reported he needed help in and out of the shower because his back would "lock down [and his] leg give out," causing him to almost fall several times.  (Tr. 196).  Plaintiff also reported he could not ride for a long time in the car, go to the store or church, sit or stand for a long time, or do yard work.

On July 7, 2009, an administrative hearing on plaintiff's claims was held before an Administrative Law Judge (ALJ).  (Tr. 24-59).  At the time of the hearing, plaintiff  was 43 years old with a limited (9th grade) education.  Plaintiff, who was represented by counsel, testified at the hearing as did a vocational expert (VE).  Plaintiff testified the "biggest thing" that keeps him from going back to work is his back pain.  (Tr. 50).  Testimony at the hearing focused almost exclusively on plaintiff's back, neck and leg pain.

On September 2, 2009, the ALJ rendered an unfavorable decision.  In his decision, the ALJ determined plaintiff had not engaged in substantial gainful activity since August 23, 2007, his alleged onset date.  (Tr. 13).  The ALJ found plaintiff has the following "severe" impairments: "chronic back pain and neck pain, multiple joint pain, and fingers cut off and re-attached to the right hand (1993)" and that such impairments "cause significant limitation in [plaintiff's] ability to perform basic work activities."  The ALJ found plaintiff's mental impairment of bipolar disorder was non-severe, and his depression impairment improved with medication.  (Tr. 13-15).  The ALJ determined plaintiff's impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the regulations.  (Tr. 15).

The ALJ determined plaintiff retains the residual functional capacity (RFC) to perform a limited range of light work, limited by occasional lifting and/or carrying up to 20 pounds and frequent lifting and/or carrying up to 10 pounds, walking and/or standing for six hours, and sitting for six hours. (Tr. 15). The ALJ also determined plaintiff's ability to perform light work is diminished by significant nonexertional limitation in that he has postural limitations allowing only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; an inability to climb ladders, ropes, or scaffolds; the necessity to avoid all exposure to dangerous, moving machinery and unprotected heights; and a moderate level of fatigue and discomfort affecting his ability to work in a competitive environment. (Tr. 15). The ALJ did not include any limitations on plaintiff's RFC as a result of the finger re-attachment surgery he found to be a severe impairment.

The ALJ indicated he considered all of plaintiff's alleged symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. (Tr. 15). The ALJ noted plaintiff's allegations, in the administrative record, of his symptoms and limitations, and detailed plaintiff's testimony regarding the same at the hearing. After "careful consideration of the evidence," the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of his pain and other symptoms were not credible to the extent they were inconsistent with the RFC assessment for a limited range of light work. (Tr. 16). The ALJ detailed the medical records concerning plaintiff's injury to his back and neck from August 2007 through June 2009 and found plaintiff's allegation that he cannot work due to chronic back, neck and

shoulder pain was a subjective complaint not supported by the objective findings.  (Tr. 16-18).  The

ALJ then detailed the objective medical evidence he found supported his credibility determination.

The ALJ noted the "changing pattern of pain, combined with no objective abnormalities and a non-

physiologic exam with symptom magnification" indicated there is no objective evidence of any

significant injury to plaintiff's spine.  (Tr. 19).  The ALJ also found that although plaintiff described

daily activities which are fairly limited, such allegations could not "be objectively verified with any

reasonable degree of certainty."  The ALJ noted that while he generally agreed with the opinions of

the state agency medical consultants that plaintiff's impairments are not disabling, he differed with

the consultants as to the degree of impairment.  The state agency medical consultants opined that

plaintiff retains the capacity to perform a full range of medium work, but the ALJ interpreted the

medical evidence as demonstrating plaintiff's impairments to be more limiting and to restrict him to

light work with postural and environmental limitations.  (Tr. 19-20).

Based on VE testimony, the ALJ determined plaintiff is unable to perform his past relevant

work (PRW) classified as very heavy/ heavy and unskilled/semi-skilled due to his RFC for limited,

light work.  (Tr. 20).  The ALJ noted that because plaintiff's ability to perform the full range of

light work is impeded by additional limitations, he consulted the VE to determine the extent to

which these limitations erode the unskilled, light occupational base of work.  (Tr. 21).  The VE

testified a hypothetical individual with plaintiff's RFC for light work with the described postural

and environmental limitations, younger age, limited education, and work experience, could perform

other unskilled, light jobs such as a small parts assembler, a cafeteria attendant, a laundry folder,

and a deli cutter.  Based on the VE's testimony, the ALJ found plaintiff is capable of performing

other work existing in significant numbers in the national economy and, accordingly, found plaintiff

not disabled under the framework of Medical-Vocational Rule 202.18. The ALJ concluded plaintiff had not been under a disability as defined in the Social Security Act from August 23, 2007, his alleged onset date, through September 2, 2009, the date of the ALJ's decision. (Tr. 21).

The Appeals Council denied review of the ALJ's decision on March 2, 2010, rendering the ALJ's decision the final decision of the defendant Commissioner. (Tr. 1-5). Plaintiff now seeks judicial review.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v.*

*Heckler*, 707 F.2d at 164.  Stated differently, the level of review is not *de novo*.  The fact that the

ALJ <u>could</u> have found plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case

comes to federal court with the issue being limited to whether there was substantial evidence to

support the ALJ decision.

III.

ISSUES

This case involves a determination at Step Five of the five-step sequential analysis utilized

in evaluating disability cases.  Consequently, this Court is limited to reviewing the issue of whether

there was substantial evidence in the record as a whole to support the administrative finding that

plaintiff retained the ability to perform work that exists in significant numbers in the national

economy, and whether the proper legal standards were applied in making this determination.  To

this extent, plaintiff presents the following issues:

  1.    The ALJ's RFC finding is not supported by substantial evidence because the
        ALJ failed to include any "use of hand" limitations in the RFC;

  2.    The ALJ committed reversible legal error in determining plaintiff's mental
        impairments are not "severe."

IV.

MERITS

A.

RFC Finding

The ALJ determined plaintiff has the RFC to perform a limited range of light work, limited

by exertional, postural and environmental limitations.  Specifically, the ALJ found the plaintiff

could occasionally lift and carry only up to 20 pounds; frequently lift and carry only up to 10

pounds; stand and/or walk for a total of about six hours; sit for a total of about six hours;

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; should avoid all exposure to dangerous, moving machinery and unprotected heights; and is limited by a moderate level of fatigue and discomfort which affects his ability to work in a competitive environment.  The ALJ did not include any handling limitations or any manipulative limitations.

By his first ground, plaintiff argues the ALJ's finding as to his RFC is not supported by substantial evidence because the ALJ failed to:

1.    Include any manipulative limitations with regard to plaintiff's hands in his RFC finding; or

2.    Adequately account for plaintiff's severe neck and back pain in his RFC finding.[7]

In his Finding of Fact No. 3, the ALJ found one of plaintiff's "severe" impairments to be "fingers cut off and re-attached to the right hand."  Plaintiff maintains this Step 2 severity finding amounted to an acknowledgment by the ALJ that plaintiff has some form of right hand impairment, and that such impairment is more than a "slight abnormality [having] such a minimal effect" on plaintiff that it would not be expected to interfere with plaintiff's ability to work, *see Stone v. Heckler*, 752 F.2d 1099, 1102(5th Cir. 1985), and/or an acknowledgment that plaintiff's right hand impairment "significantly limits" plaintiff's physical abilities to do basic work activities.  *See* SSR 96-3p.  If the ALS's severity finding was not enough, in and of itself, to demonstrate manipulative limitations of his right hand, plaintiff also points to his testimony that he has right hand pain, drops objects, is unable to fully extend his fingers on his right hand, use a hammer, or grasp objects well, and his further testimony of having lost 75% of the use of his right hand (presumably as a result of

---

[7]Although plaintiff argues the ALJ failed to adequately account for plaintiff's severe neck and back pain in his RFC finding he fails to include any supporting argument to this effect in his brief.

his 1993 injury and surgery). Plaintiff also points to an emergency room medical report noting plaintiff's complaints of dropping things.

Plaintiff also notes his testimony that he has decreased sensation of both hands, as well as numbness in his left hand, and points to medical record notations of his complaints of left hand numbness. By such references it appears plaintiff is also arguing the ALJ erred in failing to include, in the RFC, manipulative limitations of plaintiff's left hand attributed to plaintiff's 2007 back injury. Plaintiff contends these non-exertional factors affecting both of plaintiff's hands cause significant limitation to plaintiff's ability to perform basic work activities, and concludes the ALJ's RFC finding, which fails to accommodate for plaintiff's hand impairments in any way, conflicts with SSR 96-8p (which requires all limitations be included in the RFC).

Plaintiff contends he was prejudiced by this error in the ALJ's RFC finding because the ALJ found plaintiff retained the ability to perform other light, unskilled work such as a small parts assembler, a cafeteria attendant, a laundry folder, and a deli cutter. Plaintiff notes the *Dictionary of Occupational Titles* (DOT) defines each of these jobs as requiring "frequent" handling. Plaintiff maintains that if the ALJ had properly found manipulative limitations, particularly in handling, of both hands, and included such limitations in his RFC finding, such jobs would have been eliminated because of the requirement of frequent handling.

The defendant Commissioner, in his response to plaintiff's brief, does not directly address this issue. While the brief addresses the issue of whether there is substantial evidence to support a determination plaintiff suffered no limitations from the severance and surgical re-attachment of the fingers of his right hand, the brief does not address the initial issue raised by plaintiff, *i.e.*, the issue that the ALJ, having included the re-attachment surgery as a "severe impairment," must also have

found the impairment to have some impact on plaintiff's ability to work.  In particular, defendant has not addressed whether a "severe" finding at Step 2 necessarily requires imposition of corresponding limitations to an individual's RFC at Step 4.

The determination of a claimant's RFC is the sole responsibility of the ALJ.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1546(c), 416.946(c).  In making the RFC determination, the ALJ must consider all of the relevant evidence of record, including subjective evidence of a claimant's limitations.  20 C.F.R. § 404.1545(a)(3).  Furthermore, the ALJ must weigh all of the opinion evidence, 20 C.F.R. §§ 404.1527(d), 416.927(d), generally giving controlling weight to a treating physician's medical opinion if supported.  *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The ALJ made the finding that "fingers cut off and re-attached to the right hand" in 1993 was a severe impairment.  While the ALJ could have noted this previous injury, surgical repair, and date thereof as mere past history rather than including it as a current severe impairment, he did not.  Whether the ALJ intended, in an abundance of caution, to simply note the history of the injury, the severity of it, and that the previous injury would not "be expected to interfere with plaintiff's ability to work," or whether the ALJ intended to find a severe impairment which causes a "significant limitation" on plaintiff's ability to perform basic work activity is not clear.

If the ALJ did not consider the prior re-attachment surgery to have more than a minimal effect on plaintiff's ability to work but listed such surgery as a severe impairment simply as a historical reference, the ALJ opinion fails to disclose such.  If the ALJ listed the surgery as a severe impairment because he found it had more than a minimal impact on plaintiff's ability to work, such would require additional limitations in his RFC and in the hypothetical to the VE, and the failure to

include such would require reversal.

After reviewing the administrative record, the undersigned is of the opinion the ALJ could have found plaintiff's 1993 surgical re-attachment did <u>not</u> constitute a severe impairment.  Plaintiff appeared to have fully recovered from the surgery and, in fact, maintained gainful employment following the surgery from 1994 through 2007.  In his brief, the Commissioner has throughly referenced those portions of the record which would have supported this conclusion.

However, as plaintiff points out in his brief, the ALJ did find the re-attachment surgery <u>was</u> a severe impairment and, as plaintiff points out, the record contains testimony from plaintiff detailing the problems he experiences as a result of such impairment.  While the ALJ addressed plaintiff's complaints of back and neck pain, finding such complaints not credible to the extent such complaints would have eliminated plaintiff's ability to perform a limited range of light work, the ALJ did not specifically address plaintiff's testimony regarding the limitations on his ability to use his hands.

In the final analysis, this Court, on appellate review, cannot speculate as to what the ALJ may have considered.  Specifically, this Court cannot find that the ALJ's inclusion of the re-attachment surgery as a severe impairment was merely meaningless verbiage.  While there is a possibility the ALJ inserted the re-attachment surgery mistakenly, or in error, there is also a possibility the ALJ included the re-attachment surgery as a severe impairment because he found it to be a severe impairment and further found some, even if not all, of plaintiff's testimony regarding the limitations on the use of his hands to be credible.  Without some explanation in the record as to how plaintiff can suffer from a severe impairment, which by definition must have more than a minimal effect on plaintiff's ability to work and why such severe impairment would not have had

any limitation on plaintiff's ability to handle objects or pose other manipulative limitations which would affect the jobs identified by the vocational expert, the decision cannot stand.  It is somewhat troubling that this issue, although presented directly by plaintiff in his request for review , was not addressed by the Appeals Council.  In any event, it is the opinion and finding of the undersigned that the failure of the ALJ to include, in the RFC assessment, any limitation as a result of the re-attachment surgery he found to be a severe impairment and which he further found causes "significant limitation" in plaintiff's ability to work (Tr. 13), requires that this case be remanded for clarification of this issue.  Upon remand, a determination should be made as to whether plaintiff's re-attachment surgery is, in fact, a severe impairment and, if so, whether it imposes any handling or manipulative limitations on plaintiff's RFC and, if not, why not.  Further, if the re-attachment surgery is found to be a severe impairment imposing handling or manipulative limitations on plaintiff's RFC, additional VE testimony will be necessary to determine whether such limitations affects the jobs identified by the VE.

## B.
## Severity of Mental Impairment

Plaintiff argues the ALJ's finding that plaintiff has no severe mental impairments is not supported by substantial evidence.  Plaintiff notes the ALJ found plaintiff's mental impairments result in only "mild" limitations in the areas of activities of daily living, social functioning, and concentration, persistence and pace, and have never resulted in an episode of decompensation. Plaintiff contends the evidence establishes plaintiff suffers from medically determinable mental impairments that result in "at least moderate," rather than "mild" limitations in the areas of social functioning, and concentration, persistence and pace.  Plaintiff maintains that had the ALJ properly

evaluated his mental impairments, he would have found the impairments "severe."  Plaintiff

concludes the ALJ erred in finding his mental impairments were not severe and in failing to include

the limitations resulting from the mental impairments in his RFC finding.

Plaintiff is essentially arguing the ALJ improperly evaluated the severity of an impairment

in the course of finding plaintiff had no "severe" mental impairments.  Step 2 of the

Commissioner's sequential analysis requires the ALJ decide whether the claimant's impairment is

"severe," irrespective of age, education and work experience.  Regulations define the scope of the

term "severe impairment":

> If you do not have any impairment or combination of impairments which
> *significantly limits* your physical or mental ability to do basic work activities, we
> will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(c) & 416.920(c) (emphasis added).  In *Stone v. Heckler*, 752 F.2d 1099 (5th

Cir. 1985), however, the Fifth Circuit clarified the proper standard to be utilized in determining

whether a claimant's impairment was severe:

> [A]n impairment can be considered as not severe <u>only if</u> it is a *slight abnormality*
> [having] such *minimal effect* on the individual that it would *not be expected to
> interfere with* the individual's *ability to work*, irrespective of age, education or work
> experience.

*Id*. at 1101 (emphasis added) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).  Here,

the ALJ set forth the correct standard in setting out the five-step sequential evaluation process in his

decision.

Under Findings, the ALJ then noted plaintiff claimed "mental or emotional problems

(depression and stress) due to his injury and back pain," bipolar disorder, and bad memory

problems.  The ALJ found the medical evidence does not mention plaintiff experiencing any bad

memory problems, and that plaintiff's diagnosed depression improved with medication.  The ALJ

14

thus considered plaintiff's remaining medically determinable mental impairment, bipolar disorder, under Listing 12.04, Affective Disorders.  Finding such impairment does not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities, the ALJ found plaintiff's bipolar disorder is non-severe.  The ALJ noted plaintiff's diagnostic history for bipolar disorder beginning March 9, 2009, his treatment through prescribed medication and skills training, and progress in "trying to complete odd jobs around the house with more success."  The ALJ found "no significant limitation in functioning due to any mental impairment," citing to the exhibit of medical records from the MHMR center where plaintiff was treated.

The ALJ stated that in making this finding, he considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  In the area of activities of daily living, the ALJ recited plaintiff's reported daily activities and found plaintiff has mild limitations, "mainly limited due to his physical impairments."  In the area of social functioning, the ALJ noted plaintiff lives with his family, attended a church revival, and reported he gets angry easily which has created problems with his marriage at times.  The ALJ found plaintiff has only mild limitation in social functioning.  In the area of concentration, persistence, or pace, the ALJ noted that prior to beginning his prescribed medication, plaintiff complained of decreased concentration and difficulty staying on task, but that after beginning his medications, he had made progress in trying to complete odd jobs around the house.  As to the area of decompensation, the ALJ found plaintiff had not experienced any episodes of extended duration.  The ALJ concluded that because plaintiff's medically determinable mental impairment causes no more than mild limitation in any of the functional areas, it is non-severe.  The ALJ did not incorporate any mental limitations in his evaluation of plaintiff's

RFC.

The ALJ properly considered plaintiff's mental impairments under 20 C.F.R. § 404.1520a, utilizing the special technique involving the rating of the degree of functional limitation in activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The ALJ determined plaintiff has <u>mild</u> restrictions on activities of daily living; <u>mild</u> difficulty in maintaining social functioning; <u>mild</u> difficulties in concentration, persistence or pace; and <u>no</u> episodes of decompensation.

Plaintiff alleges the ALJ erred by not finding his mental conditions severe. However, the ALJ properly determined plaintiff's mental conditions were not severe because the medical record revealed no evidence during the relevant time period that they were imposed more than a slight abnormality (Tr. 13-17). No evidence exists showing that, during the relevant time period, plaintiff's mental conditions were disabling or prevented plaintiff from performing substantial gainful activity. *See Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (claimant has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity). Plaintiff points to diagnoses of depression and bipolar disorder as evidence of the severity of his mental conditions, however, the mere mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se; the claimant must show he is so functionally impaired by the impairment that he is precluded from engaging in any substantial gainful activity). Instead, the ALJ found the medical evidence showed plaintiff's depression or bipolar disorder had no impact on his ability to perform work activity. (Tr.

13-15).  The ALJ acknowledged the diagnoses but pointed out that plaintiff's conditions improved with medication.  (Tr. 13, 227, 332).  Conditions controlled by medication or therapy cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

The evidence also contradicts plaintiff's argument that mental limitations were warranted in the RFC determination.  Examinations showed plaintiff was "negative" for "anxiety, depression, and sleep disturbances," and was alert and fully oriented with appropriate affect and demeanor.  (Tr. 230-233, 249, 276, 314, 320, 367, 410, 430).  Plaintiff met with a licensed social worker at the Helen Farabee Regional MHMR Center from March 2009 through May 2009 for "skills training" and discussed his marital problems, anger management, and other life stressors.  (Tr. 328-336, 343-346).

This medical evidence does not support Plaintiff's allegations that his mental conditions were severe impairments.  Other evidence supports the ALJ's findings of non-severity.  The ALJ noted that plaintiff's mental conditions did not prevent him from engaging in extensive daily activities, consisting of watching television, walking for exercise, taking care of his personal needs, washing dishes, sweeping the floor, going to the grocery store, doing some yard work, driving at times, watching his children, ages 9 and 13, after school until his wife came home from work, attending a church revival near his property, and completing odd jobs around the house (Tr. 14, 19, 39-45, 174-176).  Plaintiff's ability to perform these activities is inconsistent with his allegations of severe mental conditions.  *See Leggett v. Chater*, 67 F.3d 558, 565, n.12 (5th Cir. 1995) (by his own testimony, Leggett was able to care for his three daughters, perform household chores, cut the grass in small increments, and even walk up to six blocks at a time).  The evidence supports the ALJ's step two determination that Plaintiff's mental conditions were not severe.

After the completion of the step two analysis, the ALJ moved on to step three (Tr. 13-15). Although the ALJ did not classify Plaintiff's mental conditions as severe, the ALJ considered all effects of his impairments in the subsequent sequential evaluation steps (Tr. 13-20). See 20 C.F.R. §§ 404.1545(e), 416.945(e) (once it is determined that an individual has a severe impairment for purposes of step two, the combined effect of all impairments are considered, regardless of whether they are a result of impairments that are labeled severe or non-severe). The record revealed no evidence that Plaintiff suffered from any significant functional limitations due to his non-severe mental conditions (Tr. 13-15). Hence, the ALJ properly determined that no additional limitations were warranted in the RFC finding due to Plaintiff's non-severe impairment. Plaintiff fails to raise an issue requiring remand.

The ALJ found plaintiff's mental impairments were less than a slight abnormality having such minimal effect on the plaintiff that they would not be expected to interfere with her ability to work. Plaintiff has not demonstrated this finding is not supported by substantial evidence. Plaintiff's second ground should be DENIED.

V.
CONCLUSION

Based upon the foregoing, this case should be remanded for a determination as to whether plaintiff's re-attachment surgery is, in fact, a severe impairment and, if so, whether it imposes any handling or manipulative limitations on plaintiff's RFC and, if not, why not. If the ALJ finds the re-attachment surgery is a severe impairment imposing handling or manipulative limitations on plaintiff's RFC, additional VE testimony will be necessary to determine whether such limitations affects the jobs identified by the VE.

VI.
RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to

the United States District Judge that the decision of the defendant Commissioner finding plaintiff

not disabled and not entitled to a period of benefits be REVERSED and REMANDED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September, 2011.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the
event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is
eleven (11) days from the date of filing as indicated by the "entered" date directly above the
signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by
electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means,
three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections
must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as
indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of
Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States
District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation." Objecting parties shall file the written objections with the United States

District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).